TIME WARNER CABLE, A DIVISION OF TIME WARNER ENTERTAINMENT COMPANY, L.P., Plaintiff,

v.

James E. DOYLE, in his capacity as Attorney General of the State of Wisconsin, and Alan T. Tracy, in his capacity as Secretary of the Wisconsin Department of Agriculture, Trade and Consumer Protection, Defendants.

No. 93–C–633–C.

United States District Court, W.D. Wisconsin.

March 17, 1994.

**636**

Robert H. Friebert, Friebert Finerty & St. John, S.C., Milwaukee, WI, for Time Warner Cable.

Bruce A. Craig, Asst. Atty. Gen., Madison, WI, for James E. Doyle.

Charles D. Hoornstra, Asst. Atty. Gen., Madison, WI, for Alan T. Tracy.

Jack A. Norris, Asst. Atty. Gen., State of Fla., Hollywood, FL, for Multi–State Cable Task, Amicus.

## OPINION AND ORDER

CRABB, Chief Judge.

Plaintiff, a cable television concern, is seeking to enjoin an administrative enforcement action brought by defendant James E. Doyle on August 31, 1993 before the Wisconsin Department of Agriculture, Trade and Consumer Protection, in which defendant Doyle charged plaintiff with a violation of Wis.Stat. § 100.20 for its practice of charging for a package of "à la carte" channels without obtaining an order requesting these channels by name. Defendant Doyle contended that plaintiff's billing practice constitutes "negative option billing," which is an unfair trade practice prohibited by Wis.Stat. § 100.20. In the enforcement proceeding, which remains pending but has been stayed by agreement of the parties, defendant Doyle seeks to enjoin this practice and to compel plaintiff to disgorge all income received through the alleged negative option billing. Besides pursuing an injunction against the administrative enforcement proceeding, plaintiff is seeking a declaration that federal law precludes the application of Wis.Stat. § 100.20 to plaintiff's billing practice.

Plaintiff contends that to the extent Wis. Stat. § 100.20 characterizes plaintiff's billing practices as unlawful negative option billing, the state statute is preempted by a Federal Communications Commission regulation on the subject of negative option billing that was promulgated under the 1992 Cable Television Consumer Protection and Competition Act, Pub.L. No. 102–385, 106 Stat. 1460. Plaintiff maintains also that Wisconsin's regulation of negative options constitutes regulation of cable rates, an area declared off-limits to the states by the 1992 Cable Act. Defendants respond that the FCC regulation does not have the effect of preempting the Wisconsin enforcement action and that in any event, the 1992 Cable Act forbids the FCC from preempting state consumer protection laws.[1]

The case is before the court on plaintiff's motion for summary judgment. The parties agree on the material facts and argue only the questions of law, making resolution by summary judgment appropriate. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To the extent that the FCC regulation is read as permitting plaintiff's billing practice, I conclude that the regulation conflicts impermissibly with con-

---

1. The Multi–State Cable Task Force has filed an amicus curiae brief in support of defendants' position. The Task Force echoes the arguments advanced by defendants and argues also that because negative option billing laws concern "customer service requirements," Wisconsin's enforcement action is not preempted by federal law. The 1992 Cable Act provides that states may impose customer service requirements that are more stringent than similar requirements imposed by the FCC. 47 U.S.C. § 552(c)(2). The parties address this contention in a footnote skirmish in their briefs. Although it appears to me that negative option laws are not customer service requirements within the meaning of the 1992 Cable Act, I need not address the issue to decide this case.

gressional intent as expressed by the statutory language of the Cable Act. I conclude also that Wisconsin's regulation of negative option billing does not constitute cable rate regulation. Because I find that Wisconsin's enforcement action is not preempted by federal law, I will deny plaintiff's motion for summary judgment and enter judgment for defendants, as is permitted where the record reveals that the non-moving party is entitled to judgment. *Mason v. Melendez*, 525 F.Supp. 270, 287 (W.D.Wis.1981); *see Tripp v. May*, 189 F.2d 198, 200 (7th Cir.1951).

## FACTS

Plaintiff Time Warner Cable is the division of Time Warner Entertainment Company, L.P., that operates cable television systems. Plaintiff's principal place of business is Stamford, Connecticut. Defendant James E. Doyle is the Attorney General of the State of Wisconsin and defendant Alan T. Tracy is the Secretary of the Wisconsin Department of Agriculture, Trade and Consumer Protection.

Plaintiff operates cable systems in several Wisconsin communities, including Milwaukee, Brookfield, and Plymouth–Dacada. It offers both basic and standard tiers of service in these three communities. "Basic" and "standard" refer to two "tiers" or levels of service offered by cable operators to their subscribers. To subscribe, a customer must order the first level of service offered in the "basic" tier. Subscribing to the second or "standard" tier is optional, but the great majority of subscribers order the standard tier in addition to the basic one.

Milwaukee has approximately 96,000 subscribers and Brookfield and Plymouth–Dacada each have approximately 6,000 subscribers. All three cable systems are managed by plaintiff's Milwaukee Division.

After the Cable Television Consumer Protection and Competition Act of 1992 was passed, plaintiff concluded that in order to comply with the act and the accompanying FCC regulations, it would have to restructure its service offerings to subscribers in Milwaukee, Brookfield, and Plymouth–Dacada as of September 1, 1993. As part of its restructuring, plaintiff removed certain channels from its basic and standard tiers and offered those channels on a per channel or "à la carte" basis. This practice is known in the trade as "unbundling." À la carte channels can be added or dropped by subscribers on an individual basis; they are also available in a discounted package.

In Milwaukee, Brookfield, and Plymouth–Dacada, Time Warner removed two channels, WTBS and WGN, from the basic tier. In Milwaukee and Brookfield, Time Warner removed the Discovery Channel from the standard tier. In addition, Time Warner removed E! Entertainment Television from the standard tier in Milwaukee. In Milwaukee, the removed channels were offered à la carte for $.79 a month each or as a package for $2.20 a month. In Brookfield, the removed channels were offered à la carte for $.46 a month each or as a package for $1.28 a month. In Plymouth–Dacada, the à la carte rate for the removed channels was $.76 a month each or $1.06 as a package.

The restructuring went into effect on September 1, 1993. Plaintiff billed subscribers in all three communities for the package of à la carte services. In each community, the combined price of the basic tier plus the standard tier decreased by the amount charged for the à la carte package so that after September 1, 1993, subscribers continued to receive the same number of channels that they had received before September 1, 1993 for the same price.[2]

---

**2.** Before September 1, 1993, a standard service subscriber in Milwaukee paid $24.10 a month for 51 channels. At that time, a standard service subscriber in Brookfield paid $21.25 a month for 49 channels and a standard service subscriber in Plymouth–Dacada paid $22.00 a month for 40 channels.

As of September 1, 1993, the price of basic service in Milwaukee was increased to $11.65 a month and the price of the standard tier was

decreased to $10.25 a month. Because the à la carte package cost $2.20 a month, a standard service subscriber in Milwaukee who did not cancel the à la carte package continued to receive 51 channels for $24.10 a month.

As of September 1, 1993, the price of basic service in Brookfield was decreased to $9.52 a month and the price of the standard tier was decreased to $10.40 a month. Because the à la carte package cost $1.28 a month, a standard

From August 30, 1993 through October 1993, plaintiff's Milwaukee Division notified subscribers that certain channels were now available à la carte and could be purchased separately or in a package or cancelled. The Milwaukee Division sent subscribers a letter, and in addition, it broadcast informational programming about the billing change, posted a notice in its billing department in Milwaukee, printed notices on its September and October billing invoices and enclosed explanatory inserts with its September and October bills.

Subscribers in Milwaukee, Brookfield, and Plymouth–Dacada can cancel à la carte services by calling the Milwaukee Division's customer service office. The accounts of subscribers who cancel the services are credited retroactively to September 1, 1993. New cable subscribers are advised when they order cable service that the à la carte services are optional and they do not receive the à la carte channels unless they affirmatively order them.

On or about September 1, 1993, plaintiff removed three channels from existing cable service tiers in Merrill, Wisconsin, and began to provide them as à la carte channels. Merrill subscribers received the three channels free of charge for the month of September and were encouraged to return a pre-paid post card, provided with their September billing invoice, informing plaintiff which of the à la carte channels they wished to continue to receive. After September, subscribers in the Merrill area received and paid for only those à la carte services they had requested by name on the post card.

## OPINION

The 1992 Cable Act prohibits negative option billing, 47 U.S.C. § 543(f), and empowers the Federal Communications Commission to establish regulations to prevent cable operators from evading the prohibition. *See* 47 U.S.C. § 543(h). Plaintiff contends that the FCC's authority to regulate negative option

billing derives from other subsections of the 1992 Cable Act as well and from 47 U.S.C. § 303(r). Subsection 303(r) gives the commission broad rulemaking power to carry out the provisions of the chapter established by the 1934 Communications Act of which the Cable Act is a part. Although there is room for doubt that § 303(r) continues to grant this broad authority after the enactment of the 1984 amendments to the Communications Act, the United States Supreme Court has suggested in dicta that it does. *See City of New York v. FCC,* 486 U.S. 57, 70 n. 6, 108 S.Ct. 1637, 1645 n. 6, 100 L.Ed.2d 48 (1988). However, to resolve the issue before the court, I need not determine whether the FCC has authority to promulgate regulations implementing 47 U.S.C. § 543(f).

The 1992 Cable Act defines negative option billing as the practice of charging a cable subscriber for any service that the subscriber has not "affirmatively requested by name." 47 U.S.C. § 543(f). Determining whether the FCC regulation promulgated to implement this section preempts Wisconsin's enforcement action requires answering two questions: whether the FCC intended to preempt Wisconsin law concerning negative option billing and whether the preemptive action is within the scope of the authority delegated the FCC by Congress. *See Fidelity Federal Savings & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 154, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1981). Valid agency regulations "have no less preemptive effect than federal statutes." *Id.* at 153–54, 102 S.Ct. at 3022–23.

Federal law has preemptive effect when Congress has expressed its intent to preempt state law, or when "it is clear ... that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation" without leaving room for state law on the subject. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (citing

---

service subscriber in Brookfield who did not cancel the à la carte package continued to receive 49 channels for $21.20 a month.

As of September 1, 1993, the price of basic service in Plymouth–Dacada was increased to $10.47 a month and the price of the standard tier

was decreased to $10.47 a month. Because the à la carte package cost $1.06 a month, a standard service subscriber in Plymouth–Dacada who did not cancel the à la carte package continued to receive 40 channels for $22.00 a month.

*Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) and *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Conceding that the 1992 Cable Act leaves the states a role in regulating the cable industry, plaintiff does not contend that Congress has occupied the field of cable regulation in the act. A third type of preemption, "conflict preemption," *American Agric. Movement, Inc. v. Board of Trade,* 977 F.2d 1147, 1154 (7th Cir.1992), occurs "when compliance with both state and federal law is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43 [83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248] (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941)." *Crisp,* 467 U.S. at 699, 104 S.Ct. at 2700.

The United States Supreme Court has held that when a federal agency leaves an option open to a regulated industry in order to promote a policy authorized by Congress, a state that limits the availability of that option has created an obstacle to effecting congressional objectives. *De la Cuesta,* 458 U.S. at 156, 102 S.Ct. at 3024. It is plaintiff's contention that this variety of conflict preemption is present in this case and that Congress made explicit its intent to preempt state regulation of negative option billing when it decided that the states could not regulate cable rates under the act.

The FCC regulation at issue provides that

A cable operator shall not charge a subscriber for any service or equipment that the subscriber has not affirmatively requested by name. This provision, however, shall not preclude [1] the addition or deletion of a specific program from a service offering, [2] the addition or deletion of specific channels from an existing tier of service, or [3] the restructuring or division of tiers of service that do not result in a fundamental change in the nature of an existing service or tier of service provided

that such change is otherwise consistent with applicable regulations.

47 C.F.R. § 76.981.

Plaintiff's view of this regulation is that it represents a policy choice by the FCC to promote unbundling by decreasing the likelihood that subscribers will reject the newly optional à la carte offerings previously available only as part of a tier. If Wisconsin is permitted to enforce its negative option billing prohibition against plaintiff's practice in the Milwaukee area, plaintiff contends, the effect will be to decrease the inducement to unbundle that the FCC chose to provide and to create the kind of obstacle to effecting congressional objectives that the Supreme Court condemned in *De la Cuesta.* Plaintiff reads the regulation as permitting plaintiff to restructure without causing a fundamental change by taking the sort of action plaintiff took in Milwaukee, that is, removing four channels out of fifty-one from their original tiers and continuing to offer them on an optional basis without raising the total cost of cable service. For support, plaintiff cites passages from FCC reports generated during the rulemaking proceedings. *See, e.g., In re Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992—Rate Regulation,* MM–Docket 92–266, FCC 93–177, Report and Order and Further Notice of Proposed Rulemaking (adopted April 1, 1993; released May 3, 1993) ¶ 441; *In re Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992—Rate Regulation,* MM–Docket 92–266, FCC 93–428, First Order on Reconsideration, Second Report and Order and Third Notice of Proposed Rulemaking (adopted and released Aug. 27, 1993) ¶ 86 n. 127.

Defendants' view of the regulation and the FCC reports is quite different. Defendants assert that the regulation does not authorize plaintiff's billing practice; for this reason, there is no conflict between the federal and the Wisconsin prohibition of negative option billing and thus no conflict preemption. Defendants maintain that if plaintiff's interpretation of the FCC regulation is accurate, then the regulation is inconsistent with the language of the statute prohibiting negative op-

tions. Because I am persuaded that defendants are correct on this score, I need not choose between the parties' interpretations of the FCC's intent as it relates to plaintiff's billing practices. Instead, I hold that if plaintiff has interpreted the FCC regulation correctly, the FCC has acted outside its delegated authority in promulgating the regulation.

■ Although federal regulators implementing a statute are entitled to great deference, *Chevron United States, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), a regulation may not stand if it is inconsistent with the language of the statute. *Illinois E.P.A. v. United States E.P.A.*, 947 F.2d 283 (7th Cir.1991) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988)). "If Congress has clearly spoken on the issue in question, our inquiry is at an end for 'that intention is the law and must be given effect.'" *Id.* (quoting *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9).

The 1992 Cable Act provides:

**Negative option billing prohibited.** A cable operator shall not charge a subscriber for any service or equipment that the subscriber has not affirmatively requested **by name.** For purposes of this subsection, a subscriber's failure to refuse a cable operator's proposal to provide such service or equipment shall not be deemed to be an affirmative request for such service or equipment.

47 U.S.C. § 543(f) (second emphasis added). Although the parties dispute whether the à la carte offerings are "service tiers," they appear to agree that they are "services" within the meaning of 47 U.S.C. § 543(f), noting that the legislative history indicates that the negative option billing prohibition was intended to apply to individually-priced single channels, packages, and tiers. H.R.Conf. Rep. No. 862, 102d Cong., 2d Sess. 65, *reprinted in* 1992 U.S.C.C.A.N. 1133, 1247. Defendants emphasize that plaintiff billed its subscribers for à la carte offerings (channels WTBS, WGN, E!, and Discovery, offered separately or in a "premium package") even though the subscribers had not requested

any of these offerings by their names. Defendants maintain that in so doing, plaintiff violated the statute.

Plaintiff replies as follows: its reading of the FCC regulation is consistent with the statute as shown by the FCC's statement that "restructuring of tiers and equipment ... will not bring the negative option billing provision into play if subscribers will continue to receive the same number of channels and the same equipment[; a] subscriber presumably has already 'affirmatively requested' this level of service," Report and Order ¶ 441; under the FCC regulation, plaintiff's à la carte channels have been "affirmatively requested" in compliance with the statute because at the time the à la carte channels were unbundled, plaintiff's customers had requested the service tier from which the à la carte channels were removed; and the FCC has determined that a subscriber who chooses a service tier with, for example, twenty channels, has requested twenty channels regardless whether those channels remain in a tier or are separated out into à la carte offerings.

■ If plaintiff's assessment of the FCC action is correct, the FCC has made a determination foreclosed to it by Congress. Under plaintiff's interpretation, the regulatory negative option prohibition would permit a cable operator to charge for a service that at one time was part of a tier the customer requested by name but was not requested by name itself. The express language of the statutory negative option prohibition requires a cable operator to obtain a request for a given service **by name** before the operator may charge for that service. It appears that the FCC would be permitted to construe 47 U.S.C. § 543(f) in a manner consistent with plaintiff's interpretation had Congress not specified that an "affirmative request" must be "by name." Because Congress did so specify, the FCC is not free to ignore the "by name" requirement.

■ It is a well-established rule of statutory interpretation that every phrase in a statute be given meaning, *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1516 (7th Cir. 1993), *cert. denied,* — U.S. ——, 114 S.Ct.

688, 126 L.Ed.2d 655 (1994), unless a literal interpretation "would lead to absurd results or would thwart the obvious purposes of the statute." *NuPulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 549 (7th Cir.1988) (quoting *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir.1987)). In arguing that the FCC chose to regulate negative options less strictly in order to promote unbundling more strongly, plaintiff concedes implicitly that the FCC could have chosen a more restrictive interpretation of "negative option billing"; accordingly, plaintiff cannot contend that giving "by name" its plain meaning would be absurd or contrary to congressional intent.

To the extent that plaintiff has assessed the FCC's regulation correctly as permitting the billing practice at issue, the regulation is invalid as contrary to congressional intent. *See Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781–82 n. 9. Because Wisconsin's regulation of negative option billing does not conflict with a valid federal regulation, plaintiff cannot argue that the state is precluded from prohibiting negative option billing because such a prohibition would conflict with the 1992 act by obstructing the act's implementation.

Plaintiff raises another contention: that if the FCC did not intend to preempt all state regulation of negative option billing, it stated its intention to preempt the states from enacting or enforcing their own prohibitions against negative option billing except as the state prohibitions relate to basic services. Plaintiff quotes the following footnote from the FCC Report and Order:

> Some municipalities argue that state and local governments should have concurrent enforcement powers over negative option billing practices. Austin Comments at 71–72. We do not preclude state and local authorities from adopting rules or taking enforcement action relating to basic services and equipment and consistent with the implementing rules we adopt and their powers under state law to impose penalties.

Report and Order, ¶ 439 n. 1095. Although plaintiff does not argue that Congress intended to allow the FCC to "occupy the field" of negative option billing regulation, plaintiff treats this statement by the FCC as an assertion that the FCC intended to occupy this field outside the context of basic services.

Defendants ignore this statement by the FCC. However, they argue that through 47 U.S.C. § 552(c)(1), Congress has denied the FCC the power to promulgate regulations that preempt state law unless the state law is "specifically preempted" by the language of the statute itself.

47 U.S.C. § 552(c)(1) provides as follows:

**Consumer protection laws**

> Nothing in this subchapter shall be construed to prohibit any State or any franchising authority from enacting or enforcing any consumer protection law, to the extent not specifically preempted by this subchapter.

According to defendants, this section should be read to mean "nothing in the language of the statute itself shall be construed by the FCC or anyone else to preempt a state enforcement action unless the state enforcement action is specifically preempted by the language of the statute itself." Plaintiff responds that defendants misinterpret § 552(c)(1) and argues that § 552(c)(1) does not constitute a restraint on the FCC's power because "in this subchapter" should be interpreted to encompass both the statute itself and the regulations promulgated under the statute.

■ Under plaintiff's reading of § 552(c)(1), interested parties (presumably courts and potential litigants) may not construe the statute or FCC regulations to preempt Wisconsin's enforcement action unless either the statute or a regulation specifically preempts the state enforcement action. Even under this reading, there is no force to an FCC assertion that it has occupied the field of negative option prohibitions that do not concern basic services. Plaintiff does not argue that the sections of the statute itself that deal most explicitly with negative option billing, 47 U.S.C. §§ 543(f) and 543(h), "specifically preempt" Wisconsin's enforcement

action.[3] Even if § 552(c)(1) permits an FCC regulation to preempt state law, the single regulation on negative option billing promulgated by the FCC contains nothing that can be said to preempt Wisconsin's enforcement action specifically. Although the precise meaning of the phrase "specifically preempted" is unclear, I am convinced that a regulation that merely restates part of the Cable Act's statutory prohibition of negative option billing and lists three practices to be excluded from the prohibition does not specifically preempt Wisconsin's ability to enforce its own law against plaintiff.

Plaintiff's last theory is that the 1992 Cable Act specifically preempts Wisconsin's enforcement action by prohibiting states from regulating cable rates for programming offered on a per channel basis.[4] *See* 47 U.S.C. §§ 543(a)(1), 543(a)(2)(B), 543(*l*)(2)(B). Plaintiff argues that by prohibiting plaintiff from charging for à la carte channels that its customers have not ordered by name, Wisconsin is establishing a rate of zero for those à la carte channels.

Defendants do not dispute that Wisconsin is precluded from regulating cable rates. They maintain, however, that Wisconsin is not regulating rates for the à la carte services when it prohibits negative option billing · because the state is not dictating the amount that plaintiff may charge consumers. Even if Wisconsin's negative option prohibition could affect cable rates, cases decided under the Cable Communications Policy Act of 1984 establish that a statute that preempts state "regulation of rates" does not preempt state regulation of matters that may affect cable rates indirectly. *Cable Television Ass'n v. Finneran*, 954 F.2d 91 (2d Cir.1992); *cf. Storer Cable Communications v. City of Montgomery*, 806 F.Supp. 1518 (M.D.Ala.

1992); *Comcast Cablevision of Sterling Heights, Inc. v. Sterling Heights,* 178 Mich. App. 117, 443 N.W.2d 440 (1989).

■ Defendants' enforcement action will not affect rates for the provision of cable services *directly* by setting them at zero. Defendant Doyle's prayer for relief in the administrative proceeding requests (1) an injunction of plaintiff's practice of billing for à la carte channels without obtaining an order for those channels by their names and (2) an order compelling plaintiff to disgorge the funds it has collected pursuant to its practice. The injunction would have the effect of setting plaintiff's à la carte channel rates at zero in the future only if plaintiff continued to provide those channels free of charge to those subscribers who did not place affirmative orders for the channels. This possibility is unlikely at best.[5] Courts are to acknowledge the real world context of the cases before them even when the often technical process of construing a statute is at issue. *Cf. Sundstrand Corp. v. Commissioner of Internal Revenue*, 17 F.3d 965, 967–68 (7th Cir.1994).

Compelling plaintiff to disgorge funds already collected is slightly more problematic.[6] The argument can be made that if defendant Tracy requires plaintiff to give up all the money it charged for the à la carte channels in the past, he will be setting plaintiff's rate for the à la carte channels at zero retroactively to September 1, 1993, until plaintiff complies with the accompanying injunction. The problem with this argument is that it exalts form over substance. Defendants could avoid this objection if instead of seeking disgorgement, they requested and imposed a fine equal to the amount collected by plaintiff from the recipients of à la carte

---

3. I will address below plaintiff's contention that the rate regulation provisions of the 1992 Cable Act, *e.g.*, 47 U.S.C. § 543(a), specifically preempt Wisconsin's regulation of negative option billing.

4. Under the Cable Act, rates for basic service are set by local franchising authorities, and in some cases the FCC itself, in accordance with FCC regulations. 47 U.S.C. § 543(a)(2)(A). Rates for other tiers of service are regulated by the FCC. 47 U.S.C. §§ 543(a)(2)(B), 543(*l*)(2)(B). Rates for programming sold on a per channel or per

program basis are not subject to regulation. 47 U.S.C. § 543(a)(1), 543(*l*)(2)(B).

5. This assessment is borne out by plaintiff's practice in Merrill, Wisconsin, where only customers who placed an affirmative order for à la carte channels continued to receive those channels.

6. I note defendants' statement in one of their briefs that defendant Doyle has drafted a stipulation dropping the request for disgorgement from his prayer for relief.

services. Of course, it is possible that plaintiff would pass along to consumers the expense it incurred in paying the fine, but this possibility has never been held to prevent states from fining or otherwise imposing costs on cable operators. Congress has given express authorization to the enactment and enforcement of state consumer protection laws that have not been specifically preempted, 47 U.S.C. § 553(c)(1), as well as to the imposition of customer service requirements that exceed those set by the FCC, 47 U.S.C. § 553(c)(2).

To bolster its argument that Congress intended to preempt state negative option regulation by classifying negative option regulation as a form of rate regulation, plaintiff notes that (1) the statutory prohibition of negative option billing, 47 U.S.C. § 543(f), is included in the section entitled "Regulation of Rates," 47 U.S.C. § 543; and (2) that the FCC dealt with negative option billing in the course of its rate regulation rulemaking proceeding, *see, e.g.,* Report and Order ¶¶ 433–42. Although such congressional and agency actions may be relevant to ascertaining congressional intent, *see Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1039 (D.C.Cir. 1986), in this instance they may demonstrate nothing more than that Congress recognized that disputes over alleged negative option billing practices would arise in connection with rate regulation-induced restructuring. In any event, these possible indications of congressional intent, such as they are, are not strong enough to overcome the presumption against preemption. *See Rice,* 331 U.S. at 230, 67 S.Ct. at 1152 ("historic police powers of the States [are] not to be superseded ... unless that was the clear and manifest purpose of Congress").

I conclude that Wisconsin's prohibition of negative option billing does not conflict with an FCC regulation because the regulation is invalid to the extent that it authorizes the billing practice challenged by defendant Doyle. I conclude also that the federal statutory and regulatory provisions dealing with negative option billing do not "specifically preempt" Wisconsin's negative option billing law in any other way. Furthermore, Congress's bar of state regulation of cable rates does not have preemptive effect in this case because Wisconsin's regulation of negative option billing does not constitute regulation of cable rates. Accordingly, I will deny plaintiff's motion for summary judgment and I will enter judgment for defendants.

## ORDER

IT IS ORDERED that the motion of plaintiff Time Warner Cable for summary judgment is DENIED. The clerk of court is ordered to enter judgment for defendants James E. Doyle and Alan T. Tracy and to close this case.