COMMONWEALTH OF KENTUCKY, EX REL. Chris GORMAN, Attorney General, Plaintiff,

v.

COMCAST CABLE OF PADUCAH, INC. and Comcast Corporation Inc., Defendants.

Civ. A. No. C94–0171–P(R).

United States District Court, W.D. Kentucky, Paducah Division.

March 15, 1995.

James C. Shackelford, Wanda R. Delaplane, Office of the Atty. Gen., Consumer Protection Div., Frankfort, KY, for Com. of Ky.

Frank G. Simpson, III, Pedley, Ross, Zielke & Gordinier, Louisville, KY, Terry S. Bienstock, Donna L. DeConna, Bienstock & Clark, Miami, FL, for Comcast Cable of Paducah, Inc., Comcast Corp., Comcast Cable Communications, Inc., defendant.

Wanda R. Delaplane, Office of the Atty. Gen., Consumer Protection Div., Frankfort, KY, for Chris Gorman.

## MEMORANDUM OPINION

RUSSELL, District Judge.

This matter is before the court on Plaintiff Commonwealth of Kentucky's motion to remand this case to state court pursuant to 28 U.S.C. § 1447(c). For the reasons stated below, the court grants that motion.

## FACTS

Plaintiff, the Attorney General of the Commonwealth of Kentucky, filed this action in the Circuit Court of McCracken County, Kentucky. Plaintiff's complaint alleges violations of the Kentucky Consumer Protection Act, K.R.S. 367.170. That complaint makes reference to § 3(f) of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §§ 521 *et seq.* (1994) (hereinafter the "1992 Cable Act"), and the Act's prohibition against "negative option billing" at § 543(f). Defendant thereafter removed the action to federal court pursuant to §§ 1441(b) and 1446, asserting federal question jurisdiction under 28 U.S.C. § 1331, the general federal question statute.

Plaintiff alleges that defendant provides cable services, specifically CableGuard and Value Pak, to Kentucky residents that are not specifically requested by its customers. Customers are required to affirmatively contact Comcast and decline the services in order to avoid receiving and being charged for them. This practice, referred to as "negative option billing," is addressed by the 1992 Cable Act:

> A cable operator shall not charge a subscriber for any service or equipment that the subscriber has not specifically requested by name. For purposes of this subsection, a subscriber's failure to refuse a cable operator's proposal to provide such service or equipment shall not be deemed to be an affirmative request for such service or equipment.

47 U.S.C. § 543(f) (1994).

Plaintiff, however, chose to pursue its claims under Kentucky law. Plaintiff alleges that defendant's billing practices, by providing consumers with services they did not request and requiring them to take affirmative steps to avoid being charged for such services, are misleading and deceptive, and thus in violation of state law. Specifically, K.R.S. 367.170(1) provides "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The gravamen of plaintiff's complaint is, therefore, that by engaging in a negative option billing practice proscribed by the 1992 Cable Act, defendant has violated K.R.S. 367.170.

## DISCUSSION

Federal question jurisdiction exists where "a well-pleaded complaint establishes either that a federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The removing party has the burden of proving that removal is proper because the federal court has original jurisdiction to hear the case. *Pullman v. Jenkins,* 305 U.S. 534, 540, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939).

Defendant argues that the 1992 Cable Act creates a federal remedy or, alternatively, that the outcome of this case necessarily turns on the court's construction of that federal statute. Defendant also suggests jurisdiction exists because of congressional preemption.

Here, the 1992 Cable Act does not expressly provide for a federal cause of action. Nor should one be inferred in this case. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors to be considered in determining whether to imply a private cause of action for the violation of a federal statute. But the essential inquiry is one of congressional intent. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2486–87, 61 L.Ed.2d 82 (1979).

An analysis of the 1992 Cable Act demonstrates that the enforcement scheme of the Act was designed to be comprehensive. Congress specifically provided for concurrent enforcement by the Federal Communications Commission ("FCC") and state authorities. 47 U.S.C. § 552(c)(1) provides "[n]othing in this title [47 U.S.C. § 521 *et seq.*] shall be construed to prohibit any State or any franchising authority from enacting or enforcing any consumer protection law, to the extent not specifically not preempted by this title [47 U.S.C. § 521 *et seq.*]." The FCC has read this section to include negative option

billing. 59 Fed.Reg. 17,961, 17,969–70 (1994), to be codified at 47 C.F.R. § 76.1 et seq. It would thus be inappropriate to infer a congressional intent to provide private enforcement mechanisms. *In re Comcast Corp. Cable TV Rate Regulation,* 1994 WL 622105 *4 (E.D.Pa.); *Pennsylvania v. Comcast Corp.,* 1994 WL 568479, at *1–2, 1994 U.S.Dist. LEXIS 14608, *5 (E.D.Pa.).

■ Defendant alternatively argues that the administrative review procedures established by the act constitute a federal remedy to satisfy the jurisdictional test of *Franchise Tax Board.*

The 1992 Cable Act provides that any subscriber, franchising authority, or governmental entity may file with the FCC a complaint challenging the reasonableness of a cable operator's rate for programming services or equipment. If the FCC finds the rate unreasonable, it may order appropriate relief, including prospective rate reductions and refunds. 47 C.F.R. §§ 76.950, 76.957 (1993).

While such procedures may afford aggrieved customers a mechanism for redress, they cannot be the basis for federal court jurisdiction. See *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (administrative remedy does not provide federal court jurisdiction); *Utley v. Varian Associates, Inc.,* 811 F.2d 1279, 1283 (9th Cir.), *cert. denied,* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987): "[Administrative] remedies, however, are not comparable to a suit against the employer in a federal court."

■ Defendant urges that federal jurisdiction exists to address a substantial question of federal law. Defendant notes that plaintiff's complaint refers to the 1992 Cable Act and claims that defendant's alleged negative option billing practices violate the Act.

Congress vested the enforcement authority for the 1992 Cable Act with the FCC. Congress did not, however, preempt the power of the states to enforce their consumer protection statutes. 47 U.S.C. § 552(c)(1) (1994); *Time Warner Cable v. Doyle,* 847 F.Supp. 635 (W.D.Wis.1994). In the context of such a framework, the reference to a "violation" of the federal statute in the state law claim can only be considered to be an assertion that the failure to conform with the federal rule is evidence that the state consumer protection law has been violated. The use of the federal regulation as a standard in a state law claim is not unusual.

■ It is well-established that the necessity of construing a federal statute in the evaluation of an otherwise purely state law claim is an insufficient basis for conferring original federal jurisdiction. *Franchise Tax Board,* 463 U.S. at 27–28, 103 S.Ct. at 2855–56; *Hudson Insurance Co. v. American Electrical Corp.,* 957 F.2d 826 (11th Cir. 1992).

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Supreme Court addressed the issue of "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for violations of that federal standard, makes the action one 'arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331." *Id.* at 805, 106 S.Ct. at 3230.

The Court began by noting that "the vast majority of cases brought under the general federal question jurisdiction of the federal courts are those in which the federal law creates the cause of action." *Id.* at 808, 106 S.Ct. at 3232. The Court went on to stress that

"The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated. For the ultimate import of such a conclusion, as we have repeatedly emphasized, is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or 'proximate cause' under state law, rather than a federal action under federal law."

*Id.* at 812, 106 S.Ct. at 3234 (citations omitted).

■ As noted above, federal question jurisdiction may lie only where the plaintiff's right to relief *depends necessarily* on a substantial question of federal law. *Franchise Tax Board,* 463 U.S. at 27–28, 103 S.Ct. at 2855–56. Where a federal standard is used in a state law claim, the court believes that the success of the state claim will only necessarily depend on the federal statute where the two are precisely co-extensive. That is to say, the locus of conduct proscribed by the federal and state statutes must be exactly the same. Where it is possible for a court to conclude that one was violated and the other was not, no substantial federal question exists.

Here the language of K.R.S. 367.170 speaks of "misleading" or "deceptive" acts. Whether or not the defendant's billing practices constitute "negative option billing" as contemplated under § 543(f) of the 1992 Cable Act, it seems reasonable that a court could find that defendants had violated the state act's prohibition against deceptive trade practices. Because the standard for liability under the state act is not co-extensive with the 1992 Cable Act, it cannot be said that the outcome of the litigation *necessarily depends* upon any given construction of the federal act, and federal jurisdiction will not lie.

■ The case is thus unlike *State of N.Y. by Abrams v. Citibank, N.A.,* 537 F.Supp. 1192 (S.D.N.Y.1982) where the court found: "If no violation [of federal law] is found, then no violation of state law could be found to have occurred." *Id.* at 1197. Here the Commonwealth of Kentucky might have chosen to proceed on its state law claims without any reference to federal law. The court is thus in agreement with *West 14th Street Comm. Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188 (2nd Cir.1987), where the court held that particularly "[w]hen Congress has provided no private right of action under a federal statute, the borrowing of that federal law as a standard of conduct in a state-created action is not sufficiently substantial to confer federal question jurisdiction." *Id.* at 193.

Defendant relies on *Milan Express Co., Inc. v. Western Surety Co.,* 886 F.2d 783 (6th Cir.1989) as a basis for federal jurisdiction. However, that case dealt with subject matter jurisdiction provided by 28 U.S.C. § 1337(a) for cases under the Interstate Commerce Act, an area traditionally within the sphere of federal jurisdiction. In addition, the rights sued upon where expressly created by federal law.

■ Finally, defendant claims that jurisdiction exists because Congress has completely preempted the field. Complete preemption can be a basis for federal subject matter jurisdiction it transforms, in essence, a complaint under state law into a federal claim. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987). However, Congress only partially preempted the field of cable regulation with the passage of the 1992 Cable Act. Congress specifically provided that the 1992 Cable Act would not operate to deprive state and local regulatory agencies of the power to enforce their own consumer protection mechanisms, and allowed some rate regulation by state and local entities consistent with the Act. *Time Warner Cable v. Doyle,* 847 F.Supp. 635, 639 (W.D.Wis.1994); 47 U.S.C. §§ 543(a), 556(b) (1994).

Because remand is appropriate under *Merrell Dow,* the court does not reach plaintiff's argument for remand based upon the abstention doctrine. This case was improvidently removed, and plaintiff is entitled to its reasonable costs and attorneys fees incurred as a result of the removal under 28 U.S.C. § 1447(c) (1992).

### ORDER

Plaintiff having filed a Motion to Remand, and the Court being sufficiently advised,

IT IS ORDERED that said motion is GRANTED. The Clerk of the Court is directed to remand this case to the Circuit Court of McCracken County, Kentucky. The Plaintiff is hereby awarded from defendants its reasonable costs and attorney's fees incurred by the removal of this action. If the parties cannot resolve the amount by agreement, plaintiff must file a petition for costs

and fees within 30 days after the entry of this order.