STATE OF VERMONT, Plaintiff,

v.

ONCOR COMMUNICATIONS, INC.
and New England Payphone,
Inc., Defendants.

Civil No. 2:95–cv–211.

United States District Court,
D. Vermont.

Feb. 8, 1996.

---

1. It would appear that the SEC is prepared to honor her request therefor.

Elliot Mitchell Burg, Vermont Attorney General's Office, Montpelier, VT, for plaintiff.

Michael B. Rosenberg, Peter Fuller Young, Miller, Eggleston & Rosenberg, Ltd., Burlington, VT, and Samuel Harris Press, Portnow, Little & Cicchetti, P.C., Burlington, VT, for defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

Defendant Oncor Communications, Inc. [Oncor] has removed this action from Chittenden Superior Court to the United States District Court for the District of Vermont pursuant to 28 U.S.C. § 1441. Plaintiff State of Vermont has timely filed a motion to remand the case pursuant to 28 U.S.C. § 1447(c) on the ground that this Court lacks federal question jurisdiction over the complaint. Oncor has opposed the motion to remand, and has moved to dismiss the complaint on the ground that pervasive federal regulation of interstate telecommunications

preempts the State of Vermont's state law action. For the reasons stated below, plaintiff's motion to remand and defendant's motion to dismiss are DENIED.

### Background

Oncor provides long-distance telephone service to owners of pay telephones, and is therefore the primary interexchange carrier ("PIC") for those telephones. Pay telephone owners choose their PIC through a process known as presubscription. Charges for long-distance calls made by users of pay telephones are usually billed by the user's local telephone exchange company ("LEC"). For most Vermont residents this company is NYNEX. Thus, a Vermont resident who makes a call from a pay phone which is presubscribed to Oncor will see a charge for that call, with a reference to Oncor, on his or her NYNEX telephone bill.

The State of Vermont claims that Oncor and its agent, Defendant New England Payphone ("NEP") switched long distance service for some pay telephones to Oncor without adequate authorization from the telephone owner, a practice known as "slamming." It contends that in some cases the PIC was switched to Oncor without any authorization whatsoever. In other cases it is alleged that Oncor obtained authorization by sending prospective customers a "commission check." Above the endorsement line on the reverse side of the check, in fine print, the prospective customer is advised that by endorsing the check, he or she is authorizing Oncor to provide operator services for not less than one year, authorizing Oncor to notify the LEC of the switch, and acknowledging that a fee for the switch may be charged to the customer.

The State of Vermont filed suit against Oncor and NEP in state court, claiming that these practices violate its Consumer Fraud Act, 9 V.S.A. § 2451 et seq., and are in violation of Federal Communication Commission ("FCC") guidelines. Oncor removed the case to this Court, claiming that removal is proper under 28 U.S.C. § 1441 because this Court has original jurisdiction under 28 U.S.C. § 1331 of a case arising under the laws of the United States. It asserts that the suit actually involves a violation of federal law in an area in which federal regulation occupies the field and precludes state interference.

The State of Vermont has moved to remand, urging that its suit is not preempted. Oncor in turn has moved to dismiss the action in this Court, on preemption grounds.

### Discussion

The removal jurisdiction of the federal courts over cases involving a federal question is set forth at 28 U.S.C. § 1441(b): "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

Removal is proper when the case falls within the original "federal question" jurisdiction of the United States district courts set forth at 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

■ Under the "well-pleaded complaint" rule, "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (emphasis omitted).

■ It is, however, "an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* at 22, 103 S.Ct. at 2853. Thus, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 24, 103 S.Ct. at 2854.

The "complete preemption" doctrine has been applied in cases involving the Labor Management Relations Act, 29 U.S.C. § 185, (*Avco Corp. v. Machinists*, 390 U.S. 557, 88

S.Ct. 1235, 20 L.Ed.2d 126 (1968)); and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, (*Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

■ Oncor argues first that the State of Vermont's complaint sets forth on its face a claim that the Federal Communications Act of 1934 (47 U.S.C. § 151 *et seq.*) [FCA] has been violated. In support it argues that this case, like that of *State of New York v. Citibank, N.A.,* 537 F.Supp. 1192 (S.D.N.Y.1982), explicitly pleads a violation of federal law.

In *Citibank,* the Attorney General of the State of New York brought suit against Citi-Bank in state court under his authority to seek injunctive relief, restitution and damages for fraud or illegality in the transaction of business. The complaint explicitly pleaded violations of the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* and Regulation E, promulgated by the Federal Reserve Board. The federal elements of the case appeared on the face of the complaint. In this case, if no violation of the EFTA were found, then no violation of state law could be found.

Since *Citibank* was decided, the United States Supreme Court has discussed statutory "arising under" jurisdiction and the well-pleaded complaint rule in at least four cases: *Franchise Tax Board, Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In *Franchise Tax Board,* the Supreme Court held that an action to enforce a state tax levy did not "arise under" ERISA, even though the operation of the federal law was mentioned in the complaint as the central question in dispute. 463 U.S. at 13–14, 28, 103 S.Ct. at 2848–49, 2856.

In *Merrell Dow,* the Supreme Court held that a complaint which alleged a violation of the Federal Food, Drug, and Cosmetic Act as an element of a state cause of action against a drug company, when Congress had determined that there would be no private federal cause of action for the violation, did not "arise under" federal law. 478 U.S. at 817, 106 S.Ct. at 3236.

In *Caterpillar,* the Supreme Court held that a state law complaint for breach of individual employment contracts where the positions were covered by a collective bargaining agreement did not "arise under" the Labor Management Relations Act, even if the defense of pre-emption was anticipated in the complaint, and even if both parties conceded that pre-emption was the only question at issue.

And in *Christianson,* the Supreme Court held that an antitrust suit which anticipated a federal patent law defense did not "arise under" federal patent law for purposes of jurisdiction over the appeal. 486 U.S. at 809, 108 S.Ct. at 2174.[1]

■ These more recent cases underscore the settled rule that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. at 3234; rather the case must present a substantial federal issue. *See The Supreme Court, 1985 Term—Leading Cases,* 100 Harv. L.Rev. 230 (1986).

The second count of the State of Vermont's complaint against Oncor and NEP alleges that the FCC has promulgated guidelines for interexchange carriers which provide that when the PIC notifies the LEC of a switch, it must certify that it has or will have a signed confirmation from the telephone owner; that the defendants have violated these guidelines; and that because of this and because defendants' practices are otherwise unfair, they are in violation of the Vermont Consumer Fraud Act.

■ Although a federal issue (violation of FCC guidelines) appears as an element of a state cause of action in this case, it does not appear "that some substantial, disputed

---

1. *Christianson* involved a determination of jurisdiction under 28 U.S.C. § 1338(a), for which the well-pleaded complaint standard is identical.

question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848. The second count as drafted offers alternative theories to support recovery under the Vermont Consumer Fraud Act: either a violation of the FCC guidelines or the commission of unfair practices. "[A] claim supported by alternative theories in the complaint may not form the basis for ["arising under"] jurisdiction unless [federal law] is essential to each of those theories." *Christianson,* 486 U.S. at 810, 108 S.Ct. at 2174.

Based on the United States Supreme Court's rulings in *Franchise Tax Board, Merrell Dow, Caterpillar* and *Christianson,* this Court concludes that the State of Vermont's well-pleaded complaint does not demonstrate on its face that the suit arises under federal law.

## II.

■ In the alternative, Oncor urges that removal is proper because the FCA completely pre-empts any attempt to employ a state consumer fraud statute to bring suit against a long distance telephone company.

> State law is pre-empted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in three circumstances. First, Congress can define explicitly the extent to which its enactments pre-empt state law.... Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.... Finally, state law is pre-empted to the extent that it actually conflicts with federal law.

*English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990) (citation omitted).

■ It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption," but "[o]n occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of

the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (citation omitted, emphasis in original).

To ascertain whether the FCA has preempted a state's effort, through its Consumer Fraud Act, to punish allegedly deceptive practices involving the switching of long distance service for pay telephones, this Court must examine the language of the statute, its structure and purpose. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

Section 207 of 47 U.S.C. provides that

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

Section 414 of 47 U.S.C. provides that

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

There is no express pre-emption provision in the statute, nor is there any express provision concerning suits for unfair or deceptive trade practices.

The Second Circuit ruled in *Nordlicht v. New York Telephone Co.,* 799 F.2d 859 (2d Cir.1986) *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987), that 47 U.S.C. § 207 does not provide a basis for removal for alleged fraudulent billing practices, absent a claim for violation of a specific provision of the Act. *See also Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2d Cir.1968).

However, in *Ivy Broadcasting* the Second Circuit concluded that

> questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed

solely by federal law and . . . the states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law.

*Id.*, at 491. Thus, in *Ivy Broadcasting,* a suit for negligence and breach of contract in rendition of interstate telephone service was deemed to have arisen under federal law and was within the jurisdiction of the federal district court under 28 U.S.C. § 1331.

*Nordlicht* involved a state suit against a New York telephone company which alleged that for Canadian calls the company would pay the Canadian phone company in Canadian dollars and bill the caller in American dollars without conversion. Although the Second Circuit concluded that the FCA did not provide a basis for removal, it followed its earlier reasoning in *Ivy Broadcasting,* and held that the claims arose under federal common law with § 1331 providing a jurisdictional basis for the suit.

*Nordlicht* controls this Court's decision in the instant case. The State of Vermont has argued that *Nordlicht* stands for the limited proposition that federal common law jurisdiction covers questions concerning the charges imposed by phone companies for the provision of interstate services, and therefore does not apply to a case involving allegations of fraud in the solicitation of new customers.

■ *Nordlicht*s holding is not nearly so narrow. Questions concerning the duties and liabilities of telephone companies with respect to interstate communication service, as well as the charges they impose, are "governed solely by federal law." *Nordlicht,* 799 F.2d at 862, quoting *Ivy Broadcasting,* 391 F.2d at 491. This language embraces fraud claims asserted against telephone companies, whether or not they specifically involve billing charges. *Gelb v. American Telephone & Telegraph Co.,* 813 F.Supp. 1022 (S.D.N.Y. 1993) (federal common law governs alleged scheme to defraud holders of AT & T calling cards by inducing them to believe that use of the card is free).

*State of Vermont v. American Frozen Foods, Inc.,* No. 89–cv–162 (D.Vt. Dec. 12,. 1989), an unpublished decision which held that the Federal Meat Inspection Act [FMIA] did not pre-empt the State's consumer fraud action, might provide persuasive reasoning by analogy for this case, were it not that *Nordlicht* and *Ivy Broadcasting* specifically advise that questions concerning the duties, charges and liabilities of telephone companies with respect to interstate service are governed solely by federal law. In *American Frozen* the Court found that the State's claim (that defendant made fraudulent representations about the price of its meats) did not involve improperly marked, labeled, or packaged meat. Therefore the Court did not reach the issue of the pre-emptive effect of the FMIA on a claim that did involve meat labeling and packaging. Here, by contrast, the State's claim of unfair and deceptive practices directly involves the duties and liabilities of the telephone company, activity, according to *Nordlicht* and *Ivy Broadcasting,* governed solely by federal law.

Because, under *Nordlicht,* federal law pre-empts state law in the area of interstate telecommunications, the case is one which arises under the laws of the United States. Removal was therefore proper, and the State of Vermont's motion to remand is DENIED.

### III.

■ Oncor argues that dismissal of the State of Vermont's case is mandated because FCC regulation of pre-subscription practices is pervasive and exclusive, and completely occupies the field. It contends that the FCC has exclusive jurisdiction over any claim that involves interexchange carrier pre-subscription practices.

■ 47 U.S.C. § 207 specifically provides that the FCC and the federal district courts have concurrent jurisdiction over damage claims against common carriers. Section 414 explicitly preserves all existing common law or statutory remedies in addition to the remedies afforded by chapter 5 of Title 47. The plain language of the statutes demonstrates that Congress did not intend to divest federal and state courts of their concurrent jurisdic-

tion over causes of action that existed independently of Title 47, chapter 5.

> [A] common-law right, even absent a saving clause, is not to be abrogated 'unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words render its provisions nugatory.'

*Nader v. Allegheny Airlines,* 426 U.S. 290, 298, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1976), quoting *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 437, 27 S.Ct. 350, 354, 51 L.Ed. 553 (1907).

The Supreme Court in *Nader* interpreted a savings clause virtually identical to § 414 to allow a common law tort action to proceed against Allegheny Airlines, despite extensive regulation of the industry by the Civil Aeronautics Board under the Federal Aviation Act. The savings clause contemplated that common-law or statutory remedies not absolutely inconsistent with the statutory scheme could coexist. 426 U.S. at 300, 96 S.Ct. at 1985.

The State of Vermont's complaint does not create the potential for an irreconcilable conflict with the FCC's regulatory scheme. In fact, as part of its case the State seeks to prove a violation of FCC standards. The FCC has noted that state action regarding "slamming" appears to be consistent with its own efforts to regulate pre-subscription practices. *In the Matter of Policies and Rules Concerning Unauthorized Changes of Consumers' Long Distance Carriers,* CC Docket No. 94–129, (adopted June 13, 1995). More specifically, the FCC issued a staff ruling on September 22, 1995 stating that the State's claims are not inconsistent with FCC requirements, the "action appears to advance rather than frustrate Commission objectives," and "preemption by the Commission ... would not be warranted." *Re: Vermont v. Oncor Communications, Inc.,* Civil File No. 89–162 (D.Vt.) Staff Ruling, September 22, 1995.

The State of Vermont's complaint is properly before this Court on removal from state court upon the existence of a federal question. This Court has concurrent jurisdiction with the FCC to afford remedies to those who are damaged by unjust, unreasonable or otherwise unlawful practices within the telecommunications industry. 47 U.S.C. § 201, 205, 206, 207. Only if the FCC is better equipped "by specialization, by insight gained through experience, and by more flexible procedure" to determine the lawfulness of the challenged practice, should this Court refer the matter to the FCC.[2] *Nader,* 426 U.S. at 304, 96 S.Ct. at 1987, quoting *Far East Conference v. United States,* 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). *See also Kaplan v. ITT–U.S. Transmission Systems, Inc.,* 589 F.Supp. 729 (E.D.N.Y.1984).

This Court finds that the action brought by the State of Vermont does not require the application of specialized knowledge of the telecommunications industry. Claims of unfair and deceptive practices are within the conventional competence of the courts; accordingly Oncor's motion to dismiss is DENIED.

## IV.

The State has argued that this Court lacks jurisdiction over this action under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states:

> [T]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Under this Amendment, this Court lacks jurisdiction over suits brought against the State of Vermont. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67

---

**2.** It is also appropriate to refer an issue to an agency in order to secure uniformity and consistency in the regulation of business entrusted to that agency, *Nader,* 426 U.S. at 304, 96 S.Ct. at

1987, but in light of the agency's own opinion that uniformity and consistency are not threatened by the State's action, this Court is not persuaded that reference is called for.

(1984). Suits brought by a state are not barred by the literal language of the amendment.

The State contends that because it is in federal court against its will the Eleventh Amendment should similarly prohibit this suit. *See California v. Steelcase, Inc.,* 792 F.Supp. 84 (C.D.Cal.1992).

It has long been the case that suits brought by a state against parties who are not other states may "be brought in or removed to the [District Courts] ..." *Illinois v. City of Milwaukee,* 406 U.S. 91, 101, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) quoting *Ames v. Kansas,* 111 U.S. 449, 470, 4 S.Ct. 437, 447, 28 L.Ed. 482 (1884). *See also State of New York v. Citibank, N.A.,* 537 F.Supp. 1192, 1197 (S.D.N.Y.1982). The Eleventh Amendment does not bar removal of an action involving a federal question in which a state is the plaintiff.

### Conclusion

For the reasons stated above, the State of Vermont's motion to remand is DENIED and Oncor's motion to dismiss is DENIED. The parties are directed to file their joint discovery schedule within thirty days from the date of this Opinion.