**Wayne DeCASTRO, et al., Plaintiffs,**

v.

**AWACS, INC., d/b/a Comcast Metrophone, Defendant.**

**Civil No. 96–1452.**

United States District Court, D. New Jersey.

Aug. 2, 1996.

---

this Court is bound to follow *Fuentes. Sheridan,* at *1.

Peter L. Masnik, Kalikman & Masnik, Haddonfield, NJ, Sherrie R. Savett, Kenneth L. Fox, Berger & Montague, Philadelphia, PA, Edward P. Clayman, Philadelphia, PA,

for Plaintiffs Wayne DeCastro, Paul Weiss, and John Solano, individually and on behalf of all others similarly situated.

Mary E. Kohart, Seamus C. Duffy, Jeanine M. Kasulis, Mary Catherine Roper, Drinker, Biddle & Reath, Princeton, NJ, for Defendant AWACS, Inc., d/b/a Comcast Metrophone.

KUGLER, United States Magistrate Judge:

Presently before the court is the plaintiffs' motion to remand the above-entitled action to the Superior Court of New Jersey, Law Division, Camden County. As explained below, this Court finds that the plaintiffs' claims are not removable under the complete pre-emption doctrine, nor has the defendant met its burden of demonstrating that diversity jurisdiction exists. For these reasons, the Court holds that it lacks subject matter jurisdiction over the above-entitled action, and the plaintiffs' motion to remand shall be granted pursuant to 28 U.S.C. § 1447(c).

## INTRODUCTION

On February 23, 1996, Plaintiffs Wayne DeCastro, Paul Weiss, and John Solano, individually and on behalf of others similarly situated, filed in state court a class complaint against Defendant AWACS, Inc., d/b/a Comcast Metrophone ("Comcast"), alleging consumer fraud and other state law claims for Comcast's alleged failure to disclose to its cellular telephone customers certain billing practices. Specifically, the Complaint alleges that contrary to industry custom and practice, Comcast begins to bill their customers when a call is initiated, rather than when a connection is made. This "non-communication period," for which Comcast charges between $.34 and $.75 per peak air-time minute, is extended by Comcast's practices of requiring its customers to input a personal identification number before a call is connected and charging for time in whole-minute increments, rounded up to the next minute. Count I contains a claim under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 et seq., alleging that Comcast's knowing failure to disclose this billing practice to its customers constitutes an unfair and deceptive practice and misrepresentation made in connection with the defendant's sale of its telecommunication services. Count II contains a breach of contract claim, alleging that Comcast's failure to disclose this billing practice is inconsistent with a reasonable interpretation of the fee schedule incorporated in Comcast's contracts with its customers. Plaintiffs claim in Count III that the defendant has breached the implied duty of good faith and fair dealing by its use of this billing practice, and Count IV raises a claim for unjust enrichment. Plaintiffs seek money damages, including treble damages and attorneys' fees under the New Jersey Consumer Fraud Act, interest and costs, and an injunction prohibiting the defendant from utilizing this billing practice in the future. The purported class (Comcast provides telecommunications services to approximately 600,000 persons, Compl. para. 17.) consists of all persons who maintained a contract for cellular telephone services with Comcast during the period February 15, 1990 through the present.

On March 25, 1996, Defendant Comcast removed the action to this Court, claiming that jurisdiction is proper on diversity grounds under 28 U.S.C. § 1332, or, alternatively, that the plaintiffs' causes of action are completely preempted by the Federal Communications Act of 1934, 47 U.S.C. §§ 151 et seq., as amended, and federal common law, thereby conferring federal question jurisdiction under 28 U.S.C. § 1331. On May 9, 1996, the plaintiffs filed the instant motion to remand pursuant to 28 U.S.C. § 1447(c), claiming that this Court lacks subject matter jurisdiction over this action.

## DISCUSSION

An action removed to federal court may be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction ..." 28 U.S.C. § 1447(c). When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir. 1993), *cert. denied sub nom. Upp v. Mellon Bank, N.A.,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). Removal statutes are strictly construed, and all doubts are re-

solved in favor of remand. *Boyer v. Snap–On–Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991).

### A. *Diversity Jurisdiction*

■ Diversity jurisdiction requires complete diversity among the parties and an amount in controversy in excess of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Plaintiffs, while conceding that diversity exists among the parties, claim that the amount in controversy is not satisfied for each class member. Under the New Jersey Consumer Fraud Act, the plaintiffs seek recovery of "their actual damages or $100.00, whichever is greater for each violation." (Compl. para. 29.) As damages for unjust enrichment, the plaintiffs seek recovery of all amounts collected by Comcast as a result of its alleged unlawful and unfair business practice. (Compl. para. 40 and p. 12 para. (c)). Finally, the plaintiffs seek treble damages and attorneys' fees under the New Jersey Consumer Fraud Act.

■ Putative class actions, prior to certification, are to be treated as class actions for jurisdictional purposes. *In re School Asbestos Litig.*, 921 F.2d 1310, 1317 (3d Cir. 1990), *cert. denied sub nom. U.S. Gypsum Co. v. Barnwell Sch. Dist. No. 45*, 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991); *Garcia v. General Motors Corp.*, 910 F.Supp. 160, 162 (D.N.J.1995). It is well-established that members of a class may not aggregate their claims in order to reach the $50,000 amount in controversy requirement; each member must individually claim at least the jurisdictional amount. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Packard v. Provident Nat'l Bank*, 994 F.2d at 1045.

■ It is the defendant's "heavy burden," as the removing party asserting that federal jurisdiction is proper, to show that the amount in controversy is satisfied. *Packard v. Provident Nat'l Bank*, 994 F.2d at 1045. In an action removed to federal court

where no specific damages are claimed, there is a "strong presumption" that the plaintiffs have not claimed an excessive amount of damages in order to obtain federal jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290–91, 58 S.Ct. 586, 591, 82 L.Ed. 845 (1938); *Spellman v. Mellon Bank*, —— F.3d ——, 1995 WL 764548 (3d Cir.1995) ("In assessing the amount claimed where the defendant seeks removal, we place great confidence in the allegations of the plaintiff's complaint, because we presume that the plaintiff has not claimed an excessive amount in order to obtain federal jurisdiction"), *amended*, 1996 WL 20762 (3d Cir. Jan. 12, 1996), *reh'g en banc granted, opinion vacated* (Feb. 16, 1996).[1]

■ The *Garcia* court set out the general rule for determining whether the amount in controversy reaches the jurisdictional minimum upon removal:

> Several standards have emerged for deciding the amount in controversy when a defendant removes a complaint seeking an unspecified amount of damages.... The Third Circuit has not decided the appropriate standard to apply in these circumstances. It has simply indicated that where a complaint does not request a precise monetary amount, the district court must make an independent inquiry into the value of the claims alleged. Further, "[t]he general [F]ederal rule is to decide the amount in controversy from the complaint itself." In such cases, the amount in controversy should be measured "by a reasonable reading of the value of the rights being litigated."

*Garcia*, 910 F.Supp. at 165 (citations omitted).

Defendant argues that at least one member of the class has a claim that exceeds $50,000. Comcast identifies Customer No. 90744095, who was billed for 85,000 calls between October, 1995 and May, 1996, and completes a mathematical equation which results in likely damages to this customer of either $86,700, $191,250, or $25,500,000, based on three sets of assumptions.

---

1. Although the opinion in *Spellman* was vacated and set for rehearing *en banc*, this Court uses it as persuasive authority on areas of law that are established elsewhere. *See Bishop v. General Motors*, 925 F.Supp. 294, 299 n. 3 (D.N.J.1996).

(Def.Brief, at 32.) Comcast also submits the affidavit of Thomas C. Maguire, Jr., controller of Comcast, who states that based upon a limited investigation he conducted, confirmed by Comcast's customer billing services provider, four subscribers were identified who maintained a contract for cellular telephone services with Comcast during the period February 1990 to the present and who could assert claims for damages in excess of $50,-000, assuming the truth of the allegations in the Complaint and the plaintiffs' entitlement to the damages demanded. Moreover, because of the limited nature of the investigation, more customers will likely be found whose claims would satisfy the amount in controversy under the allegations in the plaintiffs' complaint. (Maguire Aff.) Thus, according to Comcast, since at least one class member and likely several others will meet the jurisdictional minimum, the court may exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

In support of this contention, Comcast recognizes the Supreme Court's holding in *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that diversity jurisdiction exists over class actions *only* when the claim of *each* plaintiff exceeds the amount in controversy requirement, but Comcast argues that the adoption of 28 U.S.C. § 1367(a) overruled *Zahn* and allows for the exercise of supplemental jurisdiction over class claims that do not reach the $50,000 requirement. Section 1367(a) provides for supplemental jurisdiction over claims that form part of the same case or controversy over which a federal court has original jurisdiction, and "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." While it is true, as Comcast points out, that both the Fifth and Seventh Circuits recently have ruled that the adoption of § 1367(a) affected the holding in *Zahn, see In Re Abbott Laboratories*, 51 F.3d 524, 529 (5th Cir.), *reh'g denied*, 65 F.3d 33 (1995), and *Stromberg Metal Works, Inc. v.*

*Press Mechanical, Inc.*, 77 F.3d 928, 931–32 (7th Cir.1996), the court in *Garcia*, faced with the same challenge to *Zahn* as Comcast makes here, found that the Third Circuit had decided not to disturb the *Zahn* holding after the enactment of § 1367. *Garcia*, 910 F.Supp. at 164 (citing *Packard*, 994 F.2d at 1045–46 & n. 9) ("To date, *Zahn* and *Packard* remain good law in the Third Circuit.") In fact, in *Packard* the Third Circuit discussed the debate about whether § 1367(a) overruled *Zahn* so as to permit supplemental jurisdiction over class members who do not meet the jurisdictional minimum, but declined to decide the issue, 994 F.2d at 1045 n. 9, and in subsequent cases, the Third Circuit has cited *Zahn* without explication for the proposition that each class member must meet the jurisdictional minimum. *Spellman*, —— F.3d ——, 1995 WL 764548, at *8; *In Re Corestates Trust Fee Litig.*, 39 F.3d 61, 64 (3d Cir.1994). In the absence of express Third Circuit direction on whether § 1367(a) overrules *Zahn*, this court will not disturb the finding of *Garcia*.[2]

Regardless of the outcome of the debate over *Zahn*, "even those courts which have declined to apply *Zahn* in its strictest sense have required that the named plaintiff meet the jurisdictional amount." *Bishop v. General Motors*, 925 F.Supp. 294, 299 (D.N.J. April 29, 1996) (Irenas, J.) (citing *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995), *Neff v. General Motors Corp.*, 163 F.R.D. 478 (E.D.Pa.1995)). The named plaintiffs in this case are Wayne DeCastro, Paul Weiss, and John Solano. Although Comcast has identified one potential class member, "Customer No. 90744095," as generating enough telephone calls to meet the jurisdictional amount of damages under the plaintiffs' allegations, and has predicted that several others may also meet the jurisdictional minimum, it has failed to address the claims of the named plaintiffs in this case. Neither have the plaintiffs presented the Court with an esti-

---

**2.** The Court notes that while the extensive commentary to § 1367 states that the statute expressly overruled several Supreme Court decisions (*see, e.g., Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)) while adopting others (*see, e.g., Owen*

*Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)), it takes no position upon whether the statute overrules *Zahn*, merely observing that "[t]here is a dispute about whether *Zahn* is overruled by § 1367." David D. Siegel, *Practice Commentary*, 28 U.S.C.A. § 1367, p. 829–38.

mation of the named plaintiffs' damages, and the Court is unable to perform the kind of calculation done in *Garcia* and *Bishop* to assess the reasonable value of the plaintiffs' claims without evidence of the named plaintiffs' actual or average number of calls made under their service agreements with Comcast. The Court assumes that Customer No. 90744095 is a high-volume subscriber and that not all potential class members have made 85,000 calls within the applicable time period. Further, the Court notes that the plaintiffs seek compensation for that period of time during a telephone call between the act of dialing and the moment of connection, rounded up the next full minute; this period of time is likely measured in seconds or, at the most, a few minutes, and the rates charged by Comcast, according to the contracts attached to the plaintiffs' Complaint, range from $.34 to $.75 per peak air-time minute. Even accounting for treble damages under the New Jersey Consumer Fraud Act and a *pro rata* division of a reasonable award of attorneys' fees, the Court is left to rely upon the "strong presumption" that the plaintiffs alleged individual damages in an amount less than $50,000 to find that the defendant has not met its "heavy burden" of demonstrating that the amount in controversy is satisfied as to each individual class member. *See In re Amino Acid Lysine Antitrust Litig.*, 1996 WL 238825 (N.D.Ill. 1996) (defendant not entitled to remove class action on diversity grounds where defendant had not shown that claims of named plaintiffs satisfied amount in controversy, but rather only the claims of some unidentified putative class members). Accordingly, the court holds that federal jurisdiction is improper on diversity grounds.

### B. *Pre–Emption under the Federal Communications Act*

Comcast also argues that jurisdiction is proper under federal question jurisdiction because the Federal Communications Act pre-empts the state-law class allegations. Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized by the Constitution or other acts of Congress. Under 28 U.S.C. § 1441(a), only state court actions over which "the dis-

trict courts of the United States have original jurisdiction, may be removed by the defendant." Absent diversity jurisdiction, federal jurisdiction must be based upon an action "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Under this rule, federal pre-emption is ordinarily a defense to the plaintiff's suit, and, as it does not appear on the face of a well-pleaded complaint, it does not provide a basis for removal under 28 U.S.C. § 1441. "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. at 2430.

An "independent corollary" to this rule is the complete pre-emption doctrine, which arises where "the pre-emptive force of a federal statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Insur. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Once an area of state law has been pre-empted, any claims purportedly based upon that state law will be treated as though they arose under federal law, regardless of how the plaintiff crafted the complaint. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430.

In this case, a federal question does not appear upon the face of the class complaint. Comcast argues, however, that Congress, via adoption of the Federal Communications Act of 1934, as amended, clearly has evinced an

intent to completely pre-empt all state claims against telecommunications providers that challenge the rates and billing practices of those providers. According to Comcast, the plaintiffs' complaint: (1) directly challenges Comcast's rate structure and the manner in which Comcast applies its rates; (2) seeks a rebate to a class of consumers of rate charges imposed over a period of years; and (3) seeks imposition by injunction of an entirely new method of applying Comcast's rate structure. Comcast claims that the Federal Communications Commission ("FCC") and the federal courts have exclusive jurisdiction over such complaints against cellular telecommunications carriers under § 207 of the Act. Defendants further argue that the need for federal review in this case is particularly great given that the purported class representatives have filed three identical class complaints in three different states, and the disposition of these cases threatens to impose upon Comcast inconsistent injunctive orders and judgments.

The United States Supreme Court has emphasized the limited nature of the complete pre-emption doctrine, finding complete pre-emption only in two circumstances: under § 301 of the Labor Management Relations Act ("LMRA"), *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and § 502(a) of ERISA, *Metropolitan Life Insur. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Justice Brennan, concurring in *Metropolitan Life,* cautioned against liberal use of the complete pre-emption doctrine:

> I note that our decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*" In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.

*Id.* at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (citations omitted).

The Third Circuit, recognizing the limited basis for "recharacterizing a state law claim as a federal claim removable to district court," has adopted a two-pronged inquiry to determine whether a removed state law action is subject to complete federal pre-emption. *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311–12 (3d Cir. 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). The first question is whether the federal statute contains civil enforcement provisions under which the plaintiffs' state claims could be brought. The second question is whether the federal statute contains "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* (quoting *Metropolitan Life,* 481 U.S. at 64–66, 107 S.Ct. at 1546–48).

### 1. *The Communication Act's Enforcement Provision*

The Communications Act was implemented to regulate "all interstate ... communication by wire or radio and ... all persons engaged within the United States in such communication." 47 U.S.C. § 152(a). The Act contains a general enforcement provision allowing anyone damaged by a carrier under the Act to bring a private cause of action for money damages:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the [Federal Communications] Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207. This section provides a federal forum (in either the FCC or a federal district court) for a plaintiff's claims that a common carrier violated any provision of the Act. Comcast argues that the class claims in this case constitute allegations of violations of

§ 201(b), which requires all "charges, practices, classifications, and regulations for and in connection with ... communication service" to be just and reasonable. 47 U.S.C. § 201(b).

■ This Court finds that § 207 does not provide a federal cause of action for Counts I and II of the plaintiffs' complaint. Count I alleges a violation of the New Jersey Consumer Fraud Act, and Count II alleges a breach of contract, for Comcast's knowing failure to disclose its billing practice to its customers. Similar allegations were brought against the defendant in *Weinberg v. Sprint Corp.*, 165 F.R.D. 431 (D.N.J.1996), *appeal dismissed*, Civ. No. 96–354 (AMW) (May 23, 1996), where the plaintiff claimed that Sprint Corporation utilized deceptive and misleading advertising and promotional practices by failing to disclose to its customers certain billing practices. In response to the defendant's argument that the Federal Communications Act completely pre-empted the plaintiff's claims of fraud, negligent misrepresentation, and violation of New Jersey's Consumer Fraud Act, the court ruled that the plaintiff's claims did not fall within the parameters of the Act:

> The suit does not challenge Sprint's provision of services or its tariff rates, nor does it dispute the calculation of those rates. Instead, plaintiff's state law claims relate to Sprint's advertising practices. Sections 201, 202, and 203 of the Communications Act impose no duty on common carriers to make accurate and authentic representations in their promotional practices, and, therefore, Section 207 provides no remedy for a deviation from such conduct. Accordingly, the Court finds that the Act's civil enforcement provision does not provide a remedy through which a customer may recover for a common carrier's failure to disclose a billing practice.

*Id.* at 438–39. This court finds the reasoning of *Weinberg* persuasive as it applies to Counts I and II. As in *Weinberg*, these two claims center around Comcast's alleged failure to disclose a particular billing practice; they do not challenge the billing practice as unreasonable or contrary to law, nor does their resolution require a court to assess the reasonableness of the defendant's billing practice. This court concludes that the Communications Act does not provide an enforcement mechanism for Counts I and II, and, consequently, they are not independently removable to this court on the basis of the complete pre-emption doctrine. *See also In Re Long Distance Telecomm. Litig.*, 831 F.2d 627, 633 (6th Cir.1987) ("We believe the district court erred in holding that the state law claims for fraud and deceit, based on the defendants' failure to notify customers of the practice of charging for uncompleted calls, were preempted by the Communications Act.")

■ The allegations of Counts III and IV, however, are not so clearly distinct from the Act. Count III incorporates the previous thirty-five paragraphs of the Complaint and states that "[b]y billing and collecting from plaintiffs and the class for the non-communication period time, Defendant has breached the implied duty of good faith and fair dealing that it owed to plaintiffs and the other class members under the Contract." This implied duty of good faith and fair dealing is recognized under New Jersey law in every contract and presupposes that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 285 N.J.Super. 27, 49, 666 A.2d 549, 560 (App.Div.1995). *See also* N.J.S.A. § 12A:1–203 (Uniform Commercial Code). Although the defendant's obligations with respect to this duty arise under its contractual agreements, the allegations appear on their face to present, among other things, a direct challenge to the reasonableness of the defendant's billing practice, claiming that the practice violates the defendant's duty of good faith and fair dealing under New Jersey law. Therefore, § 207, as an avenue of redress for a violation of § 201(b), would provide a federal cause of action and a federal forum for this claim.

■ The last claim in the complaint, Count IV, incorporates the previous thirty-seven paragraphs of the Complaint and states that "[b]y billing and collecting from plaintiffs and the class for the non-communi-

cation period time, Defendant has been unjustly enriched by millions of dollars at the expense of the plaintiffs and the class. Moreover, as set forth above in paragraph 14, Defendant's policy to charge for time in the whole minute increments, rounded up to the next minute, has further unjustly enriched Defendant." While it is true, as the plaintiff argues, that unjust enrichment can be characterized merely as a form of remedy in equity, and does not constitute by itself a legal cause of action, *see Associates Commercial Corp. v. Wallia,* 211 N.J.Super. 231, 243, 511 A.2d 709 (App.Div.1986) (to establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust), the plaintiffs are attacking through this Count the defendant's practice of billing for the non-communication time, as well as the practice of charging for time in whole minute increments. Read in conjunction with Count III, Count IV would also fall under the scope of § 207.

Having found that § 207 of the Communication Act provides a federal cause of action for Counts III and IV of the plaintiffs' Complaint (thereby satisfying the first prong of the Third Circuit test), the remaining question is whether Congress intended that the Act displace Counts III and IV so as to make them removable to federal court. *See Railway Labor Exec. Assoc. v. Pittsburgh & Lake Erie Railroad Co.,* 858 F.2d 936, 942 (3d Cir.1988) ("Even if there is a civil enforcement provision and the plaintiff's state claim falls within it, the federal court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."). To do this, the court looks to the language of the statute, its legislative history, and its similarity to the preemptive provisions of the LMRA and ERISA.

### 2. *Congressional Intent for Pre-emption*

■ A strong indication that Congress did *not* intend that the Act pre-empt all claims within the telecommunications area is the Act's survival clause:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. No such savings clause is found in the preemptive provisions of the LMRA and ERISA. Many courts have relied upon this savings clause to find that Congress intended to preserve state law claims for breaches of duties which are distinguishable from duties created by the Act. In *American Inmate Phone Sys., Inc. v. U.S. Sprint Communications Co.,* 787 F.Supp. 852 (N.D.Ill.1992), the plaintiff filed a two-count complaint against a provider of long distance telecommunications services, alleging breach of a service agreement and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. In construing congressional intent, the court concluded that the duties arising from the service agreement and under Illinois' consumer fraud statute were distinct from the duties created by the Act, and so, by virtue of the Act's survival statute, were not pre-empted. *See also KVHP TV Partners, Ltd. v. Channel 12 of Beaumont, Inc.,* 874 F.Supp. 756, 761 (E.D.Tex.1995) ("The inclusion of this savings clause is plainly inconsistent with the congressional displacement of state contract and fraud claims."); *Cooperative Communications, Inc. v. AT & T Corp.,* 867 F.Supp. 1511, 1516 (D.Utah 1994) ("[S]tate law remedies which do not interfere with the Federal government's authority over interstate telephone charges or services, and which do not otherwise conflict with an express provision of the Act, are preserved by section 414.").

The court in *Castellanos v. U.S. Long Distance Corp.,* 928 F.Supp. 753, (N.D.Ill.1996), took the import of the survival clause one step further and interpreted the clause to preserve state law claims alleging breach of the *same* duties that were created under the Act. Plaintiff, on behalf of a purported class, alleged two claims under Illinois common law for fraud and tortious interference with contract and two statutory claims under Illinois' consumer fraud statutes for the defendant's actions in switching the plaintiffs' long distance service providers without their knowledge. The recent amendments to the

Communications Act expressly prohibited carriers from changing a consumer's selection of long distance service providers except in accordance with FCC regulations, and the defendants argued that by making this duty explicit in the Act, Congress confirmed its intent that claims of breach of this duty were to be governed solely by federal law. The court disagreed: "Surely Congress would have been more explicit if it wished to do so, particularly in light of the savings clause. The savings clause leads this court to conclude that Congress intended the Federal Communications Act to supplement, and not completely preempt, the state law that applies in this instance." *Id.* at 756. *See also City of Ellensburg v. King Videocable Co.,* 1993 WL 816526 (E.D.Wash.1993) ("[T]he federal causes are stated explicitly to parallel, not pre-empt, state causes of action. 47 U.S.C. § 414.").

Another provision—found in the 1993 amendments to the Act covering commercial mobile service providers, such as Comcast— indicates that Congress did not envision complete pre-emption:

> [N]o state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, *except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.*

47 U.S.C. § 332(c)(3)(A) (emphasis added). This clause permits state regulation of cellular telephone service providers in all areas other than the providers' entry into the market and the rates charged to their customers. Indeed, Congress explicitly stated:

> It is the intent of the Committee that the states still would be able to regulate the terms and conditions of these services. *By 'terms and conditions,' the Committee intends to include such matters as customer billing information and practices and billing disputes and other consumer protection matters* ... This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under 'terms and conditions.'

H.R.REP. No. 103–111, 103rd Congress, 1st Sess. 211, *reprinted in* 1993 U.S.C.A.A.N. 378, 588 (emphasis added).

While it may be true, as evidenced by 47 U.S.C. § 332(a)(3)(A), that Congress intended federal law to exclusively govern rates charged by telecommunications providers, the class claims in Counts III and IV are challenging the fairness of a billing practice, not the rates themselves. Several courts have found that state claims challenging the fairness of a billing practice are not completely pre-empted by the Communications Act. *See Esquivel v. Southwestern Bell Mobile Sys., Inc.,* 920 F.Supp. 713 (S.D.Tex. 1996) (concluding that a billing practice of charging liquidated damages for early termination of service is a "term and condition" of the agreement, rather than a rate, and therefore may be regulated by the state and is not completely pre-empted); *Commonwealth of Kentucky v. Comcast Cable of Paducah, Inc.,* 881 F.Supp. 285 (W.D.Ky.1995) (state claim under consumer fraud statute alleging unlawful practice of billing customers for certain services unless they specifically declined them, i.e. "negative option billing," was not pre-empted by the Act even though the Act specifically forbid this practice); *Commonwealth of Pennsylvania v. Comcast Corp.,* 1994 WL 568479 (E.D.Pa.1994) ("State consumer protection laws are still valid, and can regulate negative option billing").

Further support for the conclusion that Congress did not intend complete pre-emption for the allegations of Counts III and IV is found in a comparison of the pre-emptive provisions of ERISA and the LMRA. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court, discussing its *Avco* decision in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d

420 (1983), explained that the "necessary ground" of the *Avco* decision was that the "pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id.* at 23, 103 S.Ct. at 2853.

In analyzing the enforcement provision of ERISA in *Metropolitan Life*, the Court found it significant that § 502(a) was strikingly similar to § 301 of the LMRA. Section 502(a) provides:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

29 U.S.C. § 1132(f). Even in the context of a statute like ERISA with its "unique preemptive force" and its civil enforcement provision creating a federal cause of action "that lies at the heart of the statute," the Court was "reluctant to find that extraordinary preemptive power" necessary for the complete preemption doctrine to apply "[i]n the absence of explicit direction from Congress." *Id.* at 64–65, 107 S.Ct. at 1547. This reluctance was overcome in *Metropolitan Life* only because Congress had "clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a)" removable in like manner as § 301 of the LMRA. *Id.* at 66, 107 S.Ct. at 1547. The Court found such an explicit intention both from the fact that ERISA's civil enforcement provision closely paralleled § 301 of the LMRA and from the following "specific reference to the *Avco* rule" in the ERISA Conference Report:

> All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.

*Id.* (quoting H.R.REP. No. 93–1280, at 327 (1974)).

The Third Circuit in *Spellman*, in determining whether the National Bank Act, 12 U.S.C. § 85, and the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1831d, provided a basis for removal jurisdiction, analyzed the enforcement provisions of those statutes and found that the absence of language similar to § 301 of the LMRA and § 502(a) of ERISA left the intent of Congress questionable, which was not enough to justify a finding of complete pre-emption. *Spellman*, 1995 WL 764548, *6–7. The court reasoned:

> Neither the National Bank Act nor DIDA contains a jurisdictional provision evidencing congressional intent to permit removal of the sort relied upon in *Avco* and *Metropolitan Life*. Nor have the banks pointed to congressional language suggesting that parties may bring suit against banks in federal court without regard to the citizenship of the parties or the amount in controversy ... [T]he defendants point to nothing in the legislative history of [the statutes] that presents the sort of clear indication of congressional intent that we have looked for in the past.

*Id.*[3]

This reasoning can be applied with equal force to the instant situation. The enforcement provision of the Communications Act, as quoted above, does not contain language to the same effect as § 301 of the LMRA and § 502(a) of ERISA. The defendant argues that the "general framework" created by Congress in the 1993 amendments to the Communications Act evidences its intent that federal law should govern claims challenging rates and charges. Two points can be made about this argument. First, while it may be true that Congress intended claims against telecommunications providers directly challenging the provider's rates or entry into the market to be completely pre-empted, the claims in Counts III and IV in this case challenge a billing practice, not a rate or market entry. Second, a "general framework" does not rise to the level of an affirmative and clear congressional intent to make causes of action challenging a provider's billing practice removable to federal court in the same manner as those pre-empted by § 301 of the LMRA or § 502(a) of ERISA.

---

3. *See supra* note 1.

As emphasized repeatedly in Supreme Court and Third Circuit jurisprudence, to find complete pre-emption, there must be an affirmative and clear indication of Congress' intent that the Communications Act provides an exclusive federal remedy for the plaintiffs' claims. Both the general survival clause found in 47 U.S.C. § 414 and the pre-emption provision found in the 1993 amendments governing cellular telephone service providers, 47 U.S.C. § 332(c)(2)(A), along with explicit legislative history, signify just the opposite. This Court finds persuasive those cases holding that the Communications Act does not displace, but rather supplements, state law claims against cellular telephone service providers for consumer fraud, misrepresentation, breach of contract, and unfair billing practices. A comparison of the enforcement provision of the Communications Act with those of the pre-emptive enforcement provisions of the LMRA and ERISA reveals a significant difference in language, and the defendants have pointed to no clear manifest congressional intent that the Communications Act pre-empts state claims for unfair billing practices.

The defendant argues that several cases, chief among them being *Ivy Broadcasting Co. v. American Telephone and Telegraph Co.*, 391 F.2d 486 (2d Cir.1968), govern the outcome of this case. The plaintiff in *Ivy Broadcasting* brought claims in federal court against AT & T and its subsidiary for negligence and breach of contract in the rendition of interstate telephone service. The plaintiff claimed that federal jurisdiction existed under 28 U.S.C. § 1337 and the Communications Act. While holding that the Communications Act did not provide a remedy for the plaintiff's claims, the court ruled that the federal interest in uniformity of rates and services provided by interstate telegraph and telephone service providers was sufficiently strong so as to warrant the application of federal common law to the plaintiff's claims, rather than state law. "[Q]uestions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and ... the states are precluded from acting in this area." *Id.* at 491. This Court does not find

the application of *Ivy Broadcasting* to this case useful for several reasons. First, *Ivy Broadcasting* did not involve the removability of state law claims under the complete pre-emption doctrine. Second, the case was decided prior to the Supreme Court's instructive examination of complete pre-emption in *Avco, Metropolitan Life,* and *Caterpillar.* Third, the *Ivy Broadcasting* court did not address the savings clause of the Communications Act. Finally, the analysis used by the *Ivy Broadcasting* court is inconsistent with the Third Circuit test used for determining complete pre-emption. Several courts have declined to follow *Ivy Broadcasting.* See, e.g., *MCI Telecommunications Corp. v. Credit Builders of America, Inc.,* 980 F.2d 1021 (5th Cir.) ("We are not persuaded by the reasoning in *Ivy.* In fact, the decision in *Ivy* has received much criticism. The decision has been referred to as 'extreme' and 'questionable.'") (citing Charles A. Wright, Law of Federal Courts § 60 (4th ed. 1983)), *vacated on other grounds,* 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676 (1993); *American Inmate Phone Sys v. U.S. Sprint,* 787 F.Supp. at 856–58; *Boyle v. MTV Networks, Inc.,* 766 F.Supp. at 816.

Defendant argues that the Third Circuit adopted *Ivy Broadcasting* in *MCI Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086 (3d Cir.1995). However, *Teleconcepts,* like *Ivy,* was an action filed in federal court and did not decide the issue of removability under the complete pre-emption doctrine. Rather, the Third Circuit held that federal district courts have subject matter jurisdiction over actions for unpaid charges for telecommunications services which are provided under a tariff that providers must file with the FCC. In *Teleconcepts,* MCI filed an action against Teleconcepts to recover outstanding charges for long-distance telephone service. Upon the court's own initiative in reviewing subject matter jurisdiction, it ruled that the district court had jurisdiction over the action because the claim for the outstanding charges necessarily relied upon the tariff that MCI filed with the FCC. "MCI's action is based upon, and draws its life from, the tariff that MCI filed with the Federal Communications Commission." *Id.* at 1096. The *Teleconcepts*

court did not discuss the issue of complete pre-emption.

Neither the plaintiffs nor the defendant here argue that the class claims are rooted in the tariff that Comcast files with the FCC. While *Teleconcepts* and *Ivy Broadcasting* stand for the proposition that a federal district court has subject matter jurisdiction over claims for unpaid telecommunications service charges which are not specifically alleged under the Communications Act, they do not mandate the removal of state law claims under the complete pre-emption doctrine. As discussed above, the complete pre-emption doctrine provides a very narrow path to federal court, and it is distinguished from standard pre-emption principles. The defendant is free to argue in state court that the class claims, including the demand for injunctive relief, are pre-empted by federal law under ordinary pre-emption principles. "State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Railway Labor Executives Assoc. v. Pittsburgh & Lake Erie Railroad Co.,* 858 F.2d 936, 942 (3d Cir.1988). *See Caterpillar, Inc. v. Williams,* 482 U.S. at 398, 107 S.Ct. at 2432 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court.") The opinions in *Teleconcepts* and *Ivy Broadcasting* do not change the well-established principle that unless Congress intended that a federal statute preclude state courts from hearing an issue, a complaint is not removable under 28 U.S.C. § 1441 upon a defense of federal pre-emption.

Because the court in *Nordlicht v. New York Telephone Co.,* 799 F.2d 859 (2d Cir. 1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987), in ruling that removal was proper because federal common law applied to state claims against an interstate telephone service provider for fraud, and the court in *Thermalcraft, Inc. v. U.S. Sprint Communications Co.,* 779 F.Supp. 1039 (W.D.Mo.1991), in holding that removal

was proper because the Communications Act completely pre-empted state claims for breach of contract and misrepresentation, relied almost exclusively upon *Ivy Broadcasting,* this court finds their application to the class claims in the instant case equally as unhelpful. Similarly, relying upon *Nordlicht* and *Ivy Broadcasting,* the court in *State of Vermont v. Oncor Communications,* 166 F.R.D. 313 (D.Vt.1996), held that federal common law pre-empted state law claims of consumer fraud against a long-distance telephone service provider. *See also MCI Telecommunications Corp. v. Graphnet, Inc.,* 881 F.Supp. 126 (D.N.J.1995) (although not deciding a remand motion, following *Ivy Broadcasting* and *Nordlicht* to find that the plaintiff's state law claims for fraudulent inducement and breach of contract were pre-empted by federal common law).

In the absence of an affirmative indication by Congress that the Communications Act was to provide an exclusive federal remedy for the acts complained of in Counts III and IV by the class, along with the presence of the savings clauses of 47 U.S.C. § 414 and 47 U.S.C. § 332(c)(3)(A), and mindful of the words of Justice Brennan in *Metropolitan Life,* this Court concludes that the Communications Act does not require removal of the plaintiffs' claims under the complete pre-emption doctrine.

For the reasons discussed herein, the plaintiffs' motion to remand this action shall be GRANTED. The accompanying Order shall enter today.